[Civ. No. 1881. Second Appellate District, Division One.—July 15, 1919.]

## DORA B. SMART RAMSDELL, Respondent, v. R. R. RAYMOND, Appellant.

[1] VENDOR AND VENDEE — EXCHANGE OF INTERESTS IN PROPERTY — FRAUD—INSUFFICIENCY OF PLEADING AND PROOF.—In this action involving the rights of the plaintiff under an agreement whereby she exchanged her equity in certain property for the rights of the defendant to certain lots in an unsurveyed tract of land as evidenced by a receipt for the payment therefor, the plaintiff alleging fraud and collusion on the part of the defendant and the owner of the legal title to such unsurveyed tract, the pleading and the proof showed that while the plaintiff had a right to have conveyed to her by the owner of such unsurveyed tract of land a good title to the specified number of lots, or an equivalent amount of the same property, it failed to show any cause of action against the defendant, who was not shown to be a guarantor of the responsibility of the owner of the legal title to such property, or of his title thereto.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Reversed.

The facts are stated in the opinion of the court.

Valentine & Newby for Appellant.

C. S. Foltz for Respondent.

JAMES, J.—Appeal from a judgment entered against defendant and from an order denying his motion for a new trial.

In the year 1910 defendant had bargained for the purchase of a certain thirteen unsurveyed lots then owned by one Clark, and as evidence of his right to such property had received the following writing:

"Received of R. R. Raymond four thousand dollars in payment for (13) thirteen lots in Laurel Canyon known as the Clark Addition, a part of the Hermit Place. These lots are to be 25x100 in size and the title to be perfect.

"E. H. CLARK."

At the same time plaintiff was the owner of an equitable interest in certain real estate for which she had paid about the sum of two thousand five hundred dollars. This equitable interest she agreed to exchange with defendant for the rights which he had acquired in the lots first mentioned, and the exchange was effected. In consummating the deal, plaintiff was taken by defendant into the presence of Clark and a new receipt was executed by Clark in favor of the plaintiff, which was identical in terms with that above set out except that plaintiff's name was inserted instead of the name of the defendant. Plaintiff was informed at the time that the lots had not been surveyed. The lots were never surveyed and deed was never delivered to the plaintiff, notwithstanding her demand therefor, which demand was made upon Raymond; and it appears that at the time of the transaction an attachment had been levied against the property out of which the lots were to be carved by a creditor of Clark's and the property was afterwards sold under execution. It was bid in by a friend of Clark's for the latter's benefit, but before the period of redemption expired another creditor of Clark's redeemed from the purchaser, and so the legal title which had rested in Clark at the date of the transaction herein referred to was taken away. More than three years after the date of the transaction plaintiff brought this action.

It is difficult, indeed, to determine just what character to give the alleged cause of action set forth in plaintiff's amended complaint, for it contains allegations in part appropriate to the equitable action of rescission, and in

part appropriate to the legal action for damages by
reason of failure of consideration. The action as first
brought included both Raymond and Clark as defendants,
but before the trial dismissal was made as to Clark. In the
complaint it was alleged that Raymond and Clark conspired
together to cheat and defraud the plaintiff and that they
falsely and fraudulently represented that defendant Ray-
mond was the owner of thirteen lots in Laurel Canyon, the
same being known as Clark's Addition, and that Clark stated
that Raymond had purchased the said thirteen lots from
him (Clark) and had paid the sum of four thousand dollars
therefor, and that Raymond exhibited a receipt signed by
Clark wherein it was fraudulently represented that Raymond
had paid to Clark the sum of four thousand dollars as the
purchase price of said lots. It is further alleged "that said
receipt and each and every part thereof was a fabrication,
false and fraudulent, and was shown to and exhibited to
plaintiff for the further purpose of deceiving and misleading
her to believe the said false and fraudulent representations
and statements so made by defendants and each of them as
to the existence of the Clark Addition, and of the owner-
ship thereof by Raymond, for which he had paid to defend-
ant Clark in cash a large sum of money, as defendants Ray-
mond and Clark and each of them well knew the same and
each and every of said statements to be false. That in fact
and in truth the said defendant Raymond had not then and
there nor prior thereto and has not since paid to said Clark
the sum of four thousand dollars or anything of value what-
ever for said Laurel Canyon lots, and the said Clark did not
then, nor theretofore, nor at any time thereafter own a
clear or an encumbered or any title to thirteen lots, or to
any lot or piece or parcel of land in Laurel Canyon; that
there was not then and there or ever before or since that
time any lots in said Laurel Canyon known as lots in the
Clark Addition, and there never has been any such addition
in said canyon laid out or recorded or laid out and recorded
or at all, as provided or otherwise or at all, . . . and de-
fendant Raymond then and there, and in the presence of
Clark offered to convey and transfer to plaintiff said thir-
teen lots in Laurel Canyon by good and sufficient title
thereto free from all liens and encumbrances, in even ex-
change for plaintiff's interest in real estate in the town of

Monte Vista.'' Further allegation was made "that relying upon the integrity and good faith of said defendant Raymond, plaintiff believed said statements and each of them as to his ownership of the said described Laurel Canyon lots, and relying upon his said promise to convey to plaintiff said lots by a good and sufficient title free from all liens and encumbrances, . . . '' conveyed the interest owned by her in the Monte Vista property. Allegations followed that Raymond had refused to convey the lots and that the plaintiff had offered to rescind and demanded that title to her property be restored to her. Further allegation followed to the effect that Raymond had appropriated plaintiff's real estate to his own use and benefit, which she alleged he held "in trust" for plaintiff; and the complaint concluded with the following prayer: "Plaintiff prays for judgment against said defendant Raymond upon an implied contract for direct payment of money in the sum of four thousand dollars, the value of the real estate so conveyed away by him in violation of his said trust, and that an attachment against the property of defendant Raymond issue forthwith for the amount of said debt; and for such further relief . . . '' The court made findings which in general followed the allegations of the complaint as to the alleged fraudulent representations made, and concluded by first entering judgment for the sum of four thousand dollars. Later, when the motion for new trial was presented, the court made an additional order that unless plaintiff remit all amounts except the sum of two thousand five hundred dollars, the motion for new trial would be granted. The excess was accordingly remitted.

It will be noted that plaintiff did not allege that Raymond represented that title to the lots which rested in Clark was then free and unencumbered. She does allege that the title was not unencumbered, but she knew when she completed the transactions that by the terms of the receipt itself Raymond had no title which he could then convey to her, and that the legal title rested in Clark; in other words, that Raymond's interest was a mere equitable one evidenced by an unrecorded receipt. She was also informed, as the undisputed evidence shows, that Clark was to survey the property and furnish the deed. That she exchanged her equity for the rights which were evidenced by the receipt from

Clark to Raymond, seems to us to be beyond the possibility of debate. Plaintiff in her testimony stated that the property composing the thirteen lots was shown to her, and offered no evidence to show that the property was not of great value or that it was not the same property that Clark owned at that time. She offered Clark as a witness and he testified to his ownership of the same, admitted his obligation to transfer the lots, and explained first that he had not had them surveyed because he lacked the money to pay for the same, and explained also how it happened that title to the property was taken away from him through the attachment proceedings and redemption by his creditors. It appeared by his testimony that he had been a man of considerable wealth. He accounted for the fact that he was not at the time of the trial financially responsible by showing that he had had to respond to the liabilities of others with whom he had become interested or as surety, and that he had given to members of his family large sums of money. It cannot altogether be inferred from his testimony, however, if such matter is material to this controversy, that he had not been, within a reasonable time after the date of the transaction between plaintiff and defendant, of sufficient financial responsibility to make good the value of the lots which he had agreed to convey. It was asserted in the complaint that the recitation in the receipt of the payment of four thousand dollars was false and that Raymond had given nothing for his contract with Clark. The evidence showed that Raymond had exchanged with a man named Jones, in whose interest Clark issued the first receipt, property or an equity in property of some considerable value—the evidence fixed it at about two thousand five hundred dollars. So, by way of remark, it may be said that under the evidence the defendant had paid for his contract with Clark about the amount that plaintiff had paid for her equity in the Monte Vista property. Considering the question of fraud, it is nowhere contended that the evidence shows that either Clark or Raymond had any knowledge at the time of this transaction that an attachment had been levied upon the property of Clark. [1] So we think, as will appear from what has been stated, that the effect of the exchange transaction between plaintiff and defendant was to invest the plaintiff with the right to have conveyed to her by Clark a good

title to thirteen lots, or an equivalent amount of the same property. When she concluded her deal it was altogether within her power to have ascertained the condition of the title to the Clark property and by so doing have become informed of the ability of Clark to convey to her title when demanded. Clark was produced before her and made assurances that he was an honest man and would carry out his agreement, and plaintiff was in no wise left in the dark as to who was the owner of the legal title to the property and as to who would be her grantor under the receipt. We cannot by any effort of construction say that the complaint states a cause of action against Raymond as a guarantor of the responsibility of Clark.

Defendant specially pleaded that plaintiff had been guilty of laches in pursuing her remedy and had allowed defendant to change his position of ownership with reference to the property which he secured from plaintiff. This defense, no doubt, is presented with the idea of meeting the claim that this action should be deemed one in equity for rescission, and if we were so to treat the action, we think that under the evidence that plea should have been sustained. This transaction occurred in March, 1910. Plaintiff testified that in June of the same year she demanded of Raymond that he return to her her property, and she stated: "He said that he would return me my property. I told him that something must be done, the time was going by. Mr. Raymond said he would return me my property if I would give him five hundred bonus besides paying up all of whatever interest accrued, or what indebtedness. I told Mr. Raymond that I saw no reason why I should give him five hundred dollars bonus when he had given me nothing whatever. He replied that that was the settlement that he would make and no other. I demanded that he return my property to me or give me the deeds and he refused to return me the property unless I paid him the five hundred dollars bonus." The amended complaint in this action was not filed until November 26, 1913, more than three years and five months after plaintiff had made her demand for rescission and been definitely informed of the only terms upon which defendant would accede.

The grounds for reversal asserted by appellant and to which we have given consideration are entitled to be sus-

tained. We think that under the complaint and the admitted facts the findings of the court cannot be confirmed. That the plaintiff had a cause of action against Clark cannot be gainsaid, but she abandoned that action and elected to proceed against this appellant alone.

The judgment and order are reversed.

Shaw, J., and Conrey, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 11, 1919.

All the Justices concurred.